IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREG RAFFETTO, et al.,

      Plaintiffs,                    No. CIV S-08-392 FCD KJM PS

  vs.

CIT BUSINESS LENDING,          <u>ORDER AND</u>

      Defendant.               <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Defendant's motion for summary judgment came on for hearing November 18, 2009. Plaintiffs Gaylon Teslaa, Sara Teslaa and Greg Raffetto appeared telephonically in propria persona. Brian Blackman appeared for the defendant. Upon review of the documents in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

I. <u>Factual and Procedural Background</u>

        Plaintiffs bring this action alleging breach of contract, breach of covenant of good faith, breach of fiduciary duty, negligence, interference, fraud, unjust enrichment, and predatory lending. Defendant moves for summary judgment against plaintiffs on all claims, or in the alternative, partial summary judgment on plaintiff Raffetto's claims.

/////

/////

1

1   On March 24, 2006, defendant CIT Inc.'s affiliate, CIT Small Business Lending
2 Corporation ("CIT SBLC"), closed escrow on a small business loan to Wagstop, Inc.[1]
3 ("Wagstop"), which was guaranteed by plaintiffs Gaylon ("Dr. Teslaa") and Sara Teslaa
4 ("Mrs. Teslaa"). The primary purpose of the loan was to purchase commercial property located
5 at 3599 Main Street in Mammoth Lakes, California. A portion of the loan proceeds was to be
6 used to renovate space for a veterinary clinic to be operated by Dr. and Mrs. Teslaa. Dr. and
7 Mrs. Teslaa planned to lease the rest of the space at the property to tenants. At closing, Dr. Teslaa
8 signed an Authorization, a Construction Loan Agreement, a Promissory Note, an Unconditional
9 Guarantee, and a Deed of Trust on behalf of Wagstop, as a borrower, and himself, as a guarantor.
10 (Doc. No. 55), see Declaration of Karen Bailey (Bailey Decl.) Exs. 14-18. Mrs. Teslaa also
11 signed the Unconditional Guarantee, as a guarantor. Id., Ex 18.

12   Under the terms of the Authorization, CIT SBLC agreed to loan Wagstop
13 $1,228,000, with $945,000 allocated to purchase the land and $67,000 allocated for renovations
14 and improvements to the property. Bailey Decl., Ex. 14 at 5. The balance of the loan proceeds
15 was allocated for equipment, working capital, contingencies, loan interest and fees. Id. The
16 Construction Loan Agreement set forth the terms and conditions for the disbursement of the
17 renovation funds. Bailey Decl., Ex. 15. Section 5.2 of the agreement specified that Wagstop
18 could not make "any change in the Plans and Specifications" or order extra work from the
19 contractor without prior written approval from CIT SBLC. Id. at 6. Section 6.1 of the agreement
20 specified, in pertinent part, that "[d]isbursement of Loan proceeds will also be contingent upon a
21 continuation of title to the date of each disbursement." Id. at 7-8. Section 7.2 stated that CIT
22 SBLC had the right to withhold any disbursements in the event of default by the lender. Id. at
23 10-11. Section 8.1 of the agreement states that the "Agreement is solely for the benefit of Lender
24 and Borrower and no third parties shall have any rights herein or hereunder." Id. at 12.

---

26   [1] Wagstop, Inc. is not a party to the current action.

Wagstop purchased the aforementioned commercial property on the date of the loan closing, March 24, 2006. On April 4, 2006, Wagstop transferred title to the property to Mastadon Investments, LLC ("Mastadon"), which was Dr. Teslaa's new company. Request for Judicial Notice (Doc. No. 56), Ex. 36. Prior to the start of construction, the parties discovered that formal building permits and architectural drawings were required in order to change the use of the property. CIT SBLC requested that Dr. Teslaa submit both the building permit and architectural plans before it would agree to disburse construction funds. Wagstop's architect could not complete the architectural plans until October 2006. Declaration of Brian R. Blackman (Doc. No. 52) (Blackman Decl.), Ex. 27 (Teslaa Depo. at 99:15-100:21). In the intervening time period, Wagstop lost both of its tenants and could not find replacement tenants. Id., Ex. 27 (Teslaa Depo. at 113:16-118:19).

By November 2006, Dr. Teslaa had informed CIT SBLC that he had lost his tenants, and proposed expanding the scope of construction to renovate former tenant areas in order to install dog kennel, animal day care and grooming businesses. Bailey Decl., Ex. 19. The estimated increased construction costs were approximately $410,000. Blackman Decl., Ex. 35. In order to consider funding an expanded project, CIT SBLC requested that Dr. Teslaa authorize and pay for a new feasibility study and appraisal. Dr. Teslaa objected to the additional cost and refused. Id., Ex. 27.

In early 2007, the parties discussed the possibility of funding the expanded project without a feasibility study and appraisal by obtaining a second loan. Greg Raffetto served as Dr. Teslaa's representative in these discussions. However, no agreement was reached on a second loan. Bailey Decl., Exs. 22 & 23.

On May 29, 2007, CIT SBLC informed Dr. Teslaa that it would stop disbursing funds from the original loan due to Dr. Teslaa's failure to submit invoices for construction reimbursement and because the loan was in default. Bailey Decl., Ex. 24. At this point,
/////

approximately $115,000 remained to be disbursed under the original loan, including $57,000 allocated for construction. Id., Exs. 20 & 24.

In about May 2007, Dr. Teslaa began construction on the expanded portion of the project using personal and other borrowed funds. Specifically, Mastadon borrowed approximately $125,000 from Ms. Peggy Chew and this loan was recorded as a lien against the property in July 2007. Blackman Decl., Ex. 27 (Teslaa Depo. at 136:14-137:20). Raffetto supervised the construction work on the expanded project. Also in May 2007, Dr. and Mrs. Teslaa were informed by CIT SBLC that payments on the loan it had made had become due in March 2007. Neither Wagstop nor the Teslaas had made any payments from March through May of 2007. Dr. Teslaa asked Raffetto to contact CIT SBLC to negotiate a loan modification or continuance. Id., Ex. 27 at 194:4-195:6. On May 29, 2007, CIT requested updated project plans, construction cost breakdowns, and other information in order to consider a loan modification. Bailey Decl., Ex. 24. Dr. Teslaa did not respond to this initial request. Id.

In September 2007, defendant's counsel, Alan Guttenberg and David Rapson, initiated foreclosure proceedings. Declaration of Alan Guttenberg (Doc. No. 53) (Guttenberg Decl.), Ex. 1. The parties subsequently attempted to negotiate a forbearance agreement. CIT SBLC requested eleven categories of information from Dr. Teslaa in order to consider forbearance. Id., Ex. 2. Raffetto inquired about possible reimbursement for Dr. Teslaa's out of pocket expenditures to date if the eleven requests were satisfied. Guttenberg sent a written response stating that CIT would not reimburse Dr. Teslaa for out of pocket expenses. Id., Ex. 3. Despite several other email exchanges between plaintiffs and defendant's representatives, an agreement regarding forbearance was not reached. On February 14, 2008, CIT SBLC completed a non-judicial foreclosure sale of the property. Bailey Decl., Ex. 26.

On January 23, 2008, prior to the sale, plaintiffs had initiated a state court action. The action was removed from state court on the basis of diversity, becoming this action. See Docket No. 1. Plaintiffs' current claims are predicated on defendant's refusal to disburse the

approximately $115,000 in funds remaining from the original loan. In addition, plaintiffs allege that CIT representatives made promises to disburse additional funds, or made representations that "previously approved" funds would be forthcoming. Plaintiffs allege that these statements induced plaintiffs to spend personal and borrowed funds to continue an ultimately futile construction project. Second Am. Compl. ¶ 17.

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u>

1  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
2  establish the existence of this factual dispute, the opposing party may not rely upon the allegations
3  or denials of its pleadings but is required to tender evidence of specific facts in the form of
4  affidavits, and/or admissible discovery material, in support of its contention that the dispute
5  exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
6  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
7  suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
8  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
9  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
10 for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.
11 1987).

12         In the endeavor to establish the existence of a factual dispute, the opposing party
13 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
14 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
15 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
16 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
17 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
18 committee's note on 1963 amendments).

19         In resolving the summary judgment motion, the court examines the pleadings,
20 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.
21 Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
22 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
23 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
24 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
25 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
26 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

III. Evidentiary Objections

Defendant has lodged evidentiary objections to Plaintiffs' Separate Statement of Disputed Facts (Doc. No. 59) and the Declaration of Gaylon J. Teslaa (Doc. No. 62).  Defendant's objections to Plaintiffs' Statement of Disputed Facts will be sustained. Defendant's objections to the Declaration of Gaylon J. Teslaa will also be sustained. The court declines to find, however, that Dr. Teslaa's declaration is a "sham" declaration.

IV. Discussion

A. Standing of Plaintiff Raffetto

As a preliminary matter, defendant challenges Raffetto's standing to enforce the loan documents at issue. Deft's Mem. P. & A. in Supp. Mot. for Summ. J. (MSJ) at 16-17.  It is undisputed that Raffetto was not a party to any of the loan documents.  Plaintiffs do not argue for standing on the basis that Raffetto was a party to the contract. See Blackman Decl., Exs. 27 (Teslaa Depo. at 75:13-24) & 28 (Raffetto Depo. at 12:23-25, 21:7-22:15, 28:4-7). However, plaintiffs claim Raffetto has standing as a third party beneficiary because he was going to lease a portion of the completed property, he oversaw construction of the property without compensation, and Dr. Teslaa promised Raffetto an ownership interest in the project.

The applicable standard for third party beneficiary standing is articulated in California Civil Code § 1559, which provides that a third party may only enforce a contract made expressly for his benefit.[2] Raffetto is not listed as a borrower or guarantor on any of the loan documents that he now seeks to enforce. Bailey Decl., Exs. 13-16. In his deposition, Dr. Teslaa

---

[2] California Civil Code § 1559 provides: A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.

7

admitted he did not inform CIT SBLC at any time of any interest Raffetto may have had in the project. Blackman Decl., Ex. 27 (Teslaa Depo. at 75:13-24). No provisions in the loan agreement indicate a specific intent on the part of any party to benefit the tenants of the building. To the contrary, Section 8.1 of the construction agreement expressly excludes third party beneficiaries: "This Agreement is solely for the benefit of Lender and Borrower and no third parties shall have any rights herein or hereunder." See Bailey Decl., Ex. 15. Consequently, Raffetto does not have standing as a third party to enforce the loan agreement.

### B. Standing of Dr. and Mrs. Teslaa

Defendant also challenges Dr. and Mrs. Teslaa's standing to enforce the loan documents because the loan documents listed Wagstop, Inc. as the actual borrower. MSJ at 18-19.

"The fact that the contract, if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement; rather, it must appear to have been the intention of the parties to secure to him or her personally the benefit of its provisions." National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc., 171 Cal.App.4th 35, 51 (2009). As noted above, the express language of the construction loan agreement in this case excludes third party beneficiaries and indicates a lack of intent, at least on the part of CIT SBLC, to secure the benefits of the agreement to the Teslaas personally. On the other hand, it should have been readily apparent to defendant, both before and after closing the loan, that the Teslaas were the actual beneficiaries. The communications between defendant's representatives and Dr. Teslaa indicate an implicit knowledge that the loan was for the benefit of Dr. and Mrs. Teslaa rather than Wagstop. Bailey Decl., Exs. 13, 14 (noting guarantees by Teslaa personally), 15 (construction Loan Agreement identifying Teslaas as party given guarantor status), 18, 20-24. Consequently, Dr. and Mrs. Teslaa have standing as third party beneficiaries to enforce the loan documents.

/////

/////

C. Breach of Contract

Defendant argues that plaintiffs failed to satisfy the conditions precedent to performance under the contract by not complying with CIT SBLC's document and information requests. MSJ at 20-21. Defendant also argues it was excused from performance because plaintiffs materially breached the agreement by changing title to the property, failing to make loan payments, encumbering the property with liens and making material changes to the construction plan without consent. Id.

Plaintiffs argue they satisfied conditions precedent to performance because they "substantially performed" to the extent it was "reasonable," or were excused from performance. Opp'n at 26-31. Plaintiffs, however, make several critical admissions regarding their failure to comply with the various terms of the Note and Construction Agreement. For example, in his deposition, Dr. Teslaa conceded he did not submit all of the documentation required by September 2007. Blackman Decl., Ex. 27 (Teslaa Depo. at 131:24-132:16). It is not sufficient that plaintiffs complied with information requests only to the extent they felt compliance was "reasonable." While there was some level of miscommunication between the parties regarding documentation requirements, that miscommunication did not relieve plaintiffs of the obligations required to be fulfilled for continued disbursement of funds under the loan agreement.

In addition, plaintiffs have testified to taking actions (or not) placing them in a position of default under Section 7.1 of the Construction Agreement. See Bailey Decl., Ex. 15, 9-10; Blackman Decl., Ex. 27 (Teslaa Depo. at 75:1-6 (transferred title without authorization), 132:12-133:13, 135:10-21 (changed construction plans without authorization), 168:18-169:15 (failed to pay for appraisal), 163:6-164:15 (failed to make payments)). Additionally, plaintiffs' transfer of title occurred in April 2006, eleven months before defendant was purportedly obligated to disburse loan proceeds. Id., Ex. 27 (Teslaa Depo at 75:1-6, 109:19-110:15). Plaintiffs argue that the transfer of title and the failure to make loan payments were the result of

/////

assurances from CIT's representatives that these actions were legitimate. Thus, plaintiffs assert, defendants waived any objections to the action. Opp'n at 27-28.

Plaintiffs have not provided admissible evidence for their position. Plaintiffs also have failed to advance any tenable legal theory as to why they were entitled to encumber the property with liens or unilaterally change their construction budget without prior authorization. Plaintiffs' explanation, that defendant's representatives knew plaintiffs had to take on the liens in order to secure outside financing after their request for loan modification was denied, does not explain their failure to inform CIT beforehand, as required by the loan agreement. Similarly, plaintiffs have not presented any admissible evidence demonstrating they had prior approval to expand the construction project. On the record before the court, plaintiffs breached the loan agreement. Consequently, defendant was excused from performance.

Furthermore, plaintiffs represented at hearing that the disputed $115,000 in "approved, but undisbursed" funds was to be used to complete renovations to the kennel and dog day care portion of the project. These renovations were targeted at areas of the property, namely the newly proposed dog kennels originally slated for tenant use. However, defendant had not provided written approval for the "expanded project" at any time. In addition, defendant was precluded by SBA regulations from disbursing SBA-backed loan proceeds to fund tenant improvements. Under these circumstances, defendants were not obligated to disburse the remaining portion of the loan. Plaintiffs have failed to raise a genuine dispute regarding their breach of contract claim.

### D. Breach of Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing encompasses only express terms of the contract. Pasadena Live, LLC v. City of Pasadena, 114 Cal.App.4th 1089, 1094 (2004). Plaintiffs' claim for breach of covenant of good faith and fair dealing fails as a matter of law because CIT SBLC did not have an obligation to fund the plaintiffs' project due to the aforementioned breaches of the loan agreement by plaintiffs.

### E. Breach of Fiduciary Duty

Plaintiffs argue that CIT owed a fiduciary duty once it became a "partner to the project," when CIT's representatives began day-to-day involvement with the project and asked plaintiffs to seek "counseling." Opp'n at 41-44. In addition, plaintiffs argue that defendant knew or should have known about additional local "change in use" permit requirements that ultimately delayed and increased the project's cost. Id. at 44.

In general, a lender does not owe a fiduciary duty to a borrower. "A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." Nymark v. Heart Fed. Sav. & Loan Ass'n., 231 Cal.App.3d 1089, 1093 n.1 (1991). "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." Oaks Management Corporation v. Superior Court, 145 Cal.App.4th 453, 466 (2006). No evidence in the record supports the conclusion that defendant knowingly subordinated its interests to act on behalf of plaintiffs. Rather, defendant contracted to prevent any subordination. Bailey Decl., Ex. 15 §§ 5.2 & 6.1. Plaintiffs' claim for breach of fiduciary duty also fails as a matter of law.

### F. Negligence

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n., 231 Cal.App.3d 1089, 1096 (1991). Thus, liability to a borrower for negligence does not arise from "normal supervision" by the lender of the loan collateral. Wagner v. Benson, 101 Cal.App.3d 27, 35, 36 (1980).

Plaintiffs mischaracterize CIT's level of involvement by implying that asking for construction plans, feasibility studies and permits prior to authorizing increased funding

constituted a level of involvement beyond that of a normal lender. Opp'n at 45-50.  Instead, though, CIT's requests are consistent with a lender taking measures to protect its economic interests by pursuing standard underwriting requirements rather than the actions of a partner in a joint venture. Wagner v. Benson, 101 Cal.App.3d 27 (1980). Plaintiffs' claim fails as a matter of law because defendant cannot be liable for negligence arising from normal supervision of the loan.

### G. Interference

To prevail on an interference claim, plaintiff must prove that (1) a valid contract existed, (2) defendant knew about the contract, (3) defendant committed an act designed to produce breach, (4) an active breach occurred, and (5) defendant's actions caused plaintiff's damages.  Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1126 (1990).

Plaintiffs have provided no evidence of a contract between Raffetto and Dr. Teslaa. Furthermore, plaintiffs have not presented evidence demonstrating that CIT interfered with any such agreement. Plaintiffs argue that CIT was aware of a contract between Raffetto and Dr. Teslaa and that CIT interfered with this contract by failing to fund the construction project to completion. Opp'n at 51-52. As discussed above, Dr. Teslaa admitted in deposition testimony that he never informed defendant of Raffetto's financial interest in the project. Consequently, plaintiffs have failed to present evidence that would raise a genuine dispute as to whether defendant interfered with any agreement.

### H. Fraud

Plaintiffs allege "negligent misrepresentation, intentional misrepresentation, fraudulent misrepresentation, concealment, promise without intent to perform, and fraud." Second Am. Compl. ¶ 28.  All of these fraud claims are based on four alleged statements: (1) CIT SBLC representative Carolyn Redding told plaintiffs they could transfer title; (2) Carolyn Redding and CIT SBLC representative Barb Duda encouraged plaintiffs to begin building on the new expanded project plans; (3) CIT failed to send plaintiffs copies of statements stating that the loan was going

into repayment; (4) CIT's counsel Alan Guttenberg told Raffetto that plaintiffs' good faith efforts at self-funded building could or would result in remittance of remaining loan funds; and (5) Guttenberg told Raffetto that the existing loan agreement would be refinanced into a new loan. Id. at ¶ 11.8-23.

All of the fraud claims listed above require the following: (1) that defendant made a misrepresentation, (2) that plaintiffs reasonably relied on those misrepresentations, and (3) that the plaintiffs were damaged as a result of their reliance. Mandeville v. PCG & S Group, Inc., 146 Cal.App.4th 1486, 1498 (2007). Defendant is correct that plaintiffs have failed to cite any admissible evidence to demonstrate the alleged misrepresentations were ever made. MSJ at 28-31. Plaintiffs have failed to raise a genuine dispute as to any of their fraud claims, and thus have no basis for claiming punitive damages.

### I. Unjust Enrichment

Plaintiffs allege defendant was unjustly enriched by CIT representatives' encouraging plaintiffs to continue spending outside money on the construction project. Second Am. Compl. ¶ 26; Opp'n at 60. Defendant correctly notes there is no independent legal claim for unjust enrichment. See Melchior v. New Line Productions, 106 Cal.App.4th 779, 793 (2003).

### J. Predatory Lending

California Financial Code § 4973(h) forbids loan originators from encouraging consumers to default on existing "covered loans."[3] Plaintiffs allege that a CIT representative's statement telling them to ignore a late payment notice constituted a violation of section 4973(h). However, the "covered loans" referenced in section 4973(h) are consumer loans and thus the statute is not applicable to the small business loan at dispute. Cal. Fin. Code § 4970(d). Therefore, as a matter of law, there is no merit to plaintiffs' predatory lending claim.

---

[3] Specifically, section 4973(h) provides: "It is unlawful for a person who originates a covered loan to recommend or encourage a consumer to default on an existing consumer loan or other debt in connection with the solicitation or making of a covered loan that refinances all or any portion of the existing consumer loan or debt."

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's objections to Plaintiffs' Separate Statement of Disputed Facts is sustained;

2. Defendant's objections to the Declaration of Gaylon Teslaa (docket no. 66) are sustained; and

3. Defendant's request for judicial notice is granted.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (docket no. 49) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 5, 2010.

_____
U.S. MAGISTRATE JUDGE

tk
raffetto2.57